UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHAN L. HENDERSON,<br>    Plaintiff<br><br>        v.<br><br>CITY OF CHICAGO DEPARTMENT<br>OF AVIATION, *et al.*,<br>        Defendants | No. 23 CV 2025<br><br>Judge Jeremy C. Daniel |

## ORDER

The defendants' motion to dismiss [63] is granted in part and denied in part. All claims as to defendants Hyrsikos and Martin are dismissed. The claims against the City of Chicago are dismissed except as to a claim for retaliation in violation of Title VII regarding the plaintiff's termination from the Department of Aviation in March 2020. The claims against Defendants Mungari, Pup, and Senese are dismissed except as to claims for creating a hostile work environment in violation of the Equal Protection Clause of the Fourteenth Amendment arising under Section 1983.

## STATEMENT

*Pro se* plaintiff Nathan Henderson brings this lawsuit against the City of Chicago ("the City") and five individual defendants: Argentine Hyrsikos, Kevin Martin, Alex Pup, Nicholas Mangari, and Lisa Senese. He alleges that, while working for the City at the Department of Aviation and in other roles, he was subject to racial harassment, racial discrimination, and retaliation. (R. 55 at 8.)[1] The Court screened and dismissed the plaintiff's complaint under 28 U.S.C. § 1915(e)(2) for failure to state a claim and granted him leave to amend. (R. 12.)

The plaintiff filed a second amended complaint, which met the same fate as the first—the Court screened it and dismissed it with leave to replead because the second amended complaint "simply says the plaintiff was racially discriminated against and attaches several documents." (R. 14.) The plaintiff's third amended complaint was subject to the defendants' motion for a more definite statement, a request this Court granted. (R. 51.) The plaintiff filed a fourth amended complaint (R. 55), which the defendants moved to dismiss. (R. 63.) In lieu of responding to the motion to dismiss,

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

the plaintiff filed a fifth amended complaint, which the Court struck because the plaintiff did not seek leave before filing. (R. 66; 67; 69.) Other than the now struck fifth amended complaint, the plaintiff has not filed any other response to the pending motion to dismiss his fourth amended complaint.

Even when no response is filed to a motion to dismiss, the Court still must evaluate the complaint and the motion to dismiss to see if the defendants have met their burden to show the plaintiff failed to state a viable claim for relief. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). To overcome a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raises the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *In re Abbott Labs. Derivative S'holder Litig.*, 325 F.3d 795, 803 (7th Cir. 2003). Moreover, because the plaintiff initiated this action *pro se*, his complaint is construed liberally. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). The Court may read the complaint "broadly" and make necessary assumptions where the facts do not "definitely identify" the plaintiff's challenges. *Obriecht v. Raemisch*, 517 F.3d 489, 492 n.2 (7th Cir. 2008).

In his fourth amended complaint, the plaintiff alleges[2] the following: He started work at the City's Department of Aviation in the fall of 2014 as a seasonal employee. (R. 55 at 8.) He worked seasonally for two years at O'Hare Airport before transitioning to year-round employment. The plaintiff alleges that, as a seasonal employee, he experienced a culture of pervasive racism in which Black employees were treated more harshly for mistakes than non-Blacks, and in which White employees responded with anger and openly racist commentary to plans to promote non-White employees into leadership positions. (*Id.*) He reported these remarks to Defendant Hyrsikos, the Human Resources Director for the Department of Aviation. (*Id.*) When she dismissed the comments as jokes, the plaintiff filed a complaint with the City's Department of Human Resources, Equal Employment Opportunity Division ("EEO") in 2016.

After securing "year-round status" the plaintiff was transferred to Midway Airport, which he characterizes as a less desirable assignment. (*Id.*) The plaintiff objected to the transfer because he was more senior than at least one co-worker who was retained

---

[2] The plaintiff uses the form complaint provided for *pro se* litigants, to which he attaches attached a number of documents, including an email to "smoothsunnahT5@gmail.com" which contains an extensive narrative of the plaintiff's time working for the City. (R. 55 at 8.) He provides further elaboration in other handwritten passages also attached to the complaint. (*See e.g., id.*, at 20.) The Court is "free to consider 'exhibits attached to the complaint,'" *Bogie v. Rosenberg*, 705 F.3d 603, 609 (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)), and will consider these narratives as the plaintiff's factual allegations.

2

at O'Hare. (*Id*.) According to the plaintiff, when he raised this objection with Defendant Martin, the Airport Manager, he was told that somehow he was less senior than the retained employee. (*Id*.) After starting at Midway, the plaintiff alleges that he was constantly given the worst assignments and trucks that were always dirty and emitting fumes into the cabins of the trucks. (*Id*.)

In August 2018, the City's EEO partially substantiated the plaintiff's allegations from 2016. (*Id*. at 9, 12.) The plaintiff then requested a meeting with his "Union Business Agent" and Defendant Hyrsikos, to discuss a transfer out of the Department of Aviation. (*Id*. at 9) Also present was Anita Morris, though the plaintiff does not state what her role was. (*Id*.) This meeting was unproductive and did not result in the plaintiff's desired transfer. (*Id*.) Subsequently, the plaintiff filed a "hardship reasonable accommodation" request. (*Id*.) Within the next few weeks, the plaintiff received two write-ups and a suspension, and then took a leave of absence. (*Id*.) While on leave, the plaintiff was offered a transfer back to O'Hare, which he accepted. (*Id*.) In January of 2019, the Department of Aviation started requiring that drivers obtain passenger permits. (*Id*.) The plaintiff had a test scheduled to qualify for this permit on March 31, 2020, but was laid off before he could take the test. (*Id*. at 9, 12, 20.) He alleges the reason given for this termination was because he did not have his passenger permit, but also alleges that similarly-situated White and Hispanic drivers were not laid off at that time. (*Id*.) His termination occurred on the same day as the seasonal hires were let go at the end of the season. (*Id*.)

Based on documents attached to the plaintiff's original and first amended complaints, he appears to have filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on September 9, 2019, and received a right-to-sue letter on January 3, 2023. (R. 1 at 8; R. 14 at 19.)[3]

After being terminated from the Department of Aviation, the plaintiff was then hired by the City's Department of Transportation, before transferring to a dispatcher role for the Department of Street and Sanitation and Department of Water Management. (*Id*. at 9–10.) In this role, he alleges that he experienced extensive racial discrimination and harassment. (*Id*. at 10.) He alleges that his foreman, Defendant Senese, consistently belittled him while he was trying to talk on the radio, that an unknown coworker left a banana on his desk, that Defendant Mungari played movies in his presence which allegedly used the "N word . . . in the most [d]erogatory way," and that another unnamed coworker suggested he would steal a coworker's wallet. (*Id*.) During this time, the plaintiff developed sleep apnea. (*Id*.) He requested an accommodation transferring him from the night shift to the day shift, which was denied. (*Id*.) He alleges that an open slot on the day shift was instead given to a newly hired White employee. (*Id*.) During the nightshift of January 22–23, 2023,

---

[3] A complete record of the plaintiff's EEOC complaint is attached to the defendants' motion to dismiss, (R. 64), and the Court will cite to those documents from now on. As the court has noted, it will consider documents attached to the complaint(s). *Bogie*, 705 F.3d at 609.

3

when the plaintiff complained about this treatment to a supervisor, Defendant Pup, he was told that "[B]lack men . . . can't control themselves." (*Id.*) The plaintiff subsequently applied for other open positions for different jobs with the City but was unsuccessful. (*Id.*) He resigned from the City on March 31, 2023. (*Id.*)

The plaintiff does not expressly identify what his claims are, or who he brings them against. Instead, he checked the "Section 1983" box on the form *pro se* complaint, and later lists his "basic claims made" as "discrimination in promotion and layoff, unwelcomed/verbal/harassment, retaliation for filing and charge and failure to provide a reasonable accommodation." (*Id.* at 2, 5.) The Court, liberally construing the complaint, *see Perez*, 792 F.3d at 776, identifies the following claims: 1) race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.* ("Title VII") against the City for failure to promote and for being laid off, 2) a hostile work environment claim against the City under Title VII, 3) failure to provide a reasonable accommodation against the City in violation of the Americans with Disabilities Act, 1990 42 U.S.C. §§ 12101 e*t seq.* ("ADA"), and 4) race discrimination in violation of the Equal Protection clause of the 14th Amendment of the U.S. Constitution pursuant to 42 U.S.C. 1983 ("Section 1983") against the City and the Individual Defendants.

The defendants move to dismiss all claims, arguing that the plaintiff fails to clearly state claims against specific defendants, that the plaintiff's Title VII and ADA claims are time barred and not administratively exhausted, that his Section 1983 claims are time-barred, and that he fails to properly allege any of his claims. (R. 64 at 2–3.)

**ADA and Title VII**

The Court starts with the defendants' arguments that the plaintiff's ADA and Title VII claims are time barred and not exhausted. Under both the ADA and Title VII, before filing suit a plaintiff must exhaust his administrative remedies by filing a timely charge before the EEOC. *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). A charge must be filed within 300 days of the "unlawful employment practice," such as an act of discrimination or retaliation. *Id*. The EEOC can bring a suit of its own initiative or issue the plaintiff a "right-to-sue" letter. 42 U.S.C. § 2000e-5(f); *see also Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Once a "right-to-sue" letter issues, the plaintiff's administrative remedies are exhausted he has 90 days to bring a suit. *Chaidez*, 937 F.3d at 1004.

The plaintiff filed an EEOC charge and received a right-to-sue letter on January 3, 2023. (R. 1 at 8.) In the charge, the plaintiff alleged discrimination based on race and retaliation occurring between January 1, 2019 through the date he filed the charge, September 20, 2019. (R. 64-1 at 2.) He filed a supplement on March 26, 2020 to add his termination from the Department of Aviation to the charge. (R. 64-2 at 4.) Therefore, the plaintiff can pursue claims for actions that occurred in the 300 days

4

before September 20, 2019, *i.e.*, after November 24, 2018. Any claims under Title VII or the ADA based on conduct before November 24, 2018 are time-barred. Any of plaintiff's claims under Title VII or the ADA based on activity after March 2020 are not exhausted if they are "within the scope of the charges contained in [his] EEOC complaint." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). "In determining whether the current allegations fall within the scope of the earlier charges, the court looks at whether they are 'like or reasonably related to' those contained in the EEOC complaint." *Id.* (citation omitted). "If they are, the court then asks whether the current claim reasonably could have developed from the EEOC's investigation of the charges before it." *Id.*

Turning to the plaintiff's claims covering the period between November 24, 2018 and March 2020, his allegations set forth a viable Title VII claim for retaliation regarding his termination from the Department of Aviation. To plead retaliation, the plaintiff must allege that he engaged in a protected activity and "suffered an adverse action" in response. *Alamo v. Bliss*, 864 F.3d 541, 555 (7th Cir. 2017). Here, the plaintiff alleged that he engaged in protected activity when he filed his original complaint with the City's EEO office and when he filed his complaint with the EEOC. 42 U.S.C. § 2000e-3 (complaints of, or attempts to remedy, ongoing discrimination are protected activity.) His termination in March 2020 qualifies as an "adverse action." *Bliss*, 864 F.3d at 552. Last, this claim is included within the scope of his EEOC charge, as the plaintiff amended his charge to include the termination of his employment in March 2020. (R. 64-2 at 4.) Therefore, the plaintiff states a viable, properly exhausted Title VII retaliation claim.

The Defendants argue that there is inadequate link between the protected activity and the plaintiff's termination. As the defendants see it, the plaintiff filed his EEO charge in 2016, and was terminated in 2020 with the rest of the seasonal hires. (*See* R. 64 at 13 ("[the] plaintiff fails to plausibly allege that the . . . seasonal layoff [was a] materially adverse employment action[].").) However, the plaintiff alleges that he was a full-year, not seasonal, employee at the time he was fired in March 2020. (R. 55 at 9.) At the motion to dismiss stage, the Court must treat the plaintiff's version of events as accurate. *In re Abbott Labs.*, 325 F.3d at 803. Accordingly, the plaintiff has pled his termination was an adverse employment action. And there is an adequate connection pled between the plaintiff's termination and his EEO and EEOC charges. The plaintiff's EEO charge was filed in 2016, then substantiated in-part in 2018. (*Id.* at 9, 12.) The plaintiff then sought a transfer within the Department of Aviation, or in the alternative a "hardship accommodation." (*Id.* at 9.) Afterwards, he was suspended from work. (*Id.*) Next, the plaintiff filed an EEOC charge in September of 2019 and was fired in March of 2020. (*Id.* at 9; R. 64-2 at 4.) Furthermore, the plaintiff alleges he was fired for not having his passenger permit,

5

but also alleges White and Hispanic drivers who did not have the permit were not laid off at that time. (R. 55 at 9.)

These allegations support an inference that the plaintiff sought to remedy a racially hostile environment through the City's internal processes and through the EEOC. In response, his supervisors first suspended him on a temporary basis, and then fired him on a pretext, while concealing this termination amid the end of seasonal employment at the Department of Aviation. These are sufficient allegations to plausibly allege retaliation.

**Section 1983**

The Court liberally construes the plaintiff's fourth amended complaint as setting forth a Section 1983 parallel to his Title VII claims based on the above-described factual allegations. "The same standards for proving intentional racial discrimination apply to Title VII and § 1983 equal protection claims." *Davis v. Wisconsin Dep't of Corr.*, 445 F.3d 971, 976 (7th Cir. 2006). The statute of limitations for Section 1983 claims is based on the statute of limitations of personal injury cases in the state where the injury occurred. *See CBS Outdoor, Inc. v. Vill. of Plainfield.*, 959 F. Supp. 2d 1054, 1061 (N.D. Ill. 2013). Here, that is two years. *Id*. The plaintiff filed his original complaint on March 30, 2023. (R. 1.) Therefore, the plaintiff may bring claims for racial discrimination by way of a hostile work environment as Section 1983 claims for conduct occurring after March 30, 2021.

This conduct encompasses the actions of individual defendants Mungari, Pup, and Senese. "Individual liability pursuant to § 1983 'requires personal involvement in the alleged constitutional deprivation.'" *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (citation omitted). The plaintiff alleges that all three defendants committed actions of racial discrimination, and that all three contributed to the racial harassment he experienced as a dispatcher for the Department of Streets and Sanitation and Department of Water Management. While the defendants argue that the plaintiff fails to allege adequate individual conduct to support either individual discrimination or a hostile work environment claim, the Court disagrees. The plaintiff alleges both individual instances and patterns of discriminatory conduct sufficient to plead a hostile work environment. According to the plaintiff, his foreman repeatedly interfered with his ability to do his job, his coworkers subjected him to constant harassment, and the supervisor, rather than address this conduct, endorsed it. The totality of the circumstances alleged make out a plausible claim for a hostile work environment under Section 1983. *See Alamo*, 864 F.3d at 549 (hostile work environment claims are subject to a totality of the circumstance test, including "the frequency of the discriminatory conduct; its severity . . . whether it unreasonably

interferes with an employee's work performance . . . and the relationship between the harassing party and the harassed.")

However, the plaintiff's individual claim against Defendants Hyrsikos and Martin are dismissed as time barred. Any claims against them are based on conduct occurring before 2021, and therefore the statute of limitations has run.

Accordingly, the plaintiff's claims are dismissed except for a Title VII claim against the City of Chicago for retaliation, and Section 1983 claims for a hostile work environment against defendants Mungari, Pup, and Senese.

Date: January 22, 2025

JEREMY C. DANIEL
United States District Judge

7